# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

Equal Employment Opportunity Commission, )
)
        Plaintiff, )
)
  -vs- ) Civil Action No.
) 5:19-CV-4063
Schuster CO, )
)
        Defendant. )
)

      The remote deposition via videoconference of BRETT CHARLES CROSBY, called by the Plaintiff for examination, pursuant to Notice and pursuant to the Federal Rules of Civil Procedure for the United States District Court pertaining to the taking of depositions for the purpose of discovery, taken by KELLY ANN POTTS, CERTIFIED SHORTHAND REPORTER, License No. 084-003558, within and for the County of Cook and State of Illinois on the 7th day of October, 2020, at 10:04 a.m.

```
 1   A P P E A R A N C E S:

 2

 3         EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, by
           MR. MILES SHULTZ  (via Zoom)   - and -
 4         MS. ELIZABETH BANASZAK  (via Zoom)
           230 South Dearborn Street, Suite 2920
 5         Chicago, Illinois  60604
           (312) 869-8000
 6         miles.shultz@eeoc.gov
           elizabeth.banaszak@eeoc.gov
 7
                Appeared on behalf of the
 8              Plaintiff;

 9

10         KLASS LAW FIRM, by
           MR. DOUGLAS L. PHILLIPS   (via Zoom)
11         Mayfair Center
           4280 Serseant Road, Suite 290
12         Sioux City, Iowa   51106
           (712) 252-1866 Ext. 230
13         phillips@klasslaw.com

14              Appeared on behalf of the
                Defendant.
15

16
           FORTNEY & SCOTT, by
17         MR. BURTON J. FISHMAN  (via Zoom)  - and -
           MR. JOHN D. CLIFFORD   (via Zoom)
18         1750 K Street, NW, Suite 325
           Washington, DC   20006
19         (202) 689-1200
           bfishman@fortneyscott.com
20         jclifford@fortneyscott.com

21              Appeared on behalf of Cost
                Reduction Solutions.
22

23

24              *            *            *
```

1          INDEX OF EXAMINATION
2
3                                                    PAGE
4     BRETT CHARLES CROSBY
5
6     Examination (Via Zoom) by Mr. Shultz.........11
7
8
9
10                 INDEX TO EXHIBITS
11
12    EXHIBIT                                        PAGE
13
14    No. 1      Subpoena............................14
15    No. 2      Video...............................17
16    No. 3      DCI Consulting Agreement............29
17    No. 4      Test Manual.........................31
18    No. 5      Jim Wildman Presentation............33
19    No. 6      Job Task Analysis Worksheet.........53
20    No. 8      E-mail..............................62
21    No. 9      Validation Study....................67
22    No. 10     Summary Sheet.......................76
23    No. 11     E-mail..............................79
24    No. 12     E-mail..............................83

1  No. 13     CRT Schuster Validation Loss Data..84
2  No. 14     Coding for CRT to Review...........88
3  No. 15     CRT Loss Analysis Procedure........92
4  No. 16     Excel file.........................98
5  No. 17     E-mail............................106
6  No. 18     E-mail............................108
7  No. 7      E-mail.............................58

8
9
10
11
12                    *           *          *
13
14
15
16
17
18
19
20
21
22
23
24

1  THE STENOGRAPHER: We have a couple
2  things to mention prior to going on the record:
3  All parties are aware that the witness will be
4  sworn in remotely.
5  Remote depositions are more
6  challenging. We kindly ask all participants to
7  speak clearly and one at a time.
8  Here begins the videoconference
9  deposition of Brett Charles Crosby in the matter of
10 the EEOC vs. Koch [sic].
11 Beginning with the noticing
12 party, will counsel please introduce themselves,
13 state whom they represent, and stipulate to the
14 swearing in of the witness remotely?
15 MR. SHULTZ: EEOC -- Miles Shultz for
16 the EEOC.
17 This deposition is actually in
18 EEOC versus Schuster Company --
19 THE STENOGRAPHER: Oh.
20 MR. SHULTZ: -- out of the Northern
21 District of Iowa.
22 THE STENOGRAPHER: Okay.
23 MR. SHULTZ: I'll send you the correct
24 caption.

```
 1                    THE STENOGRAPHER:  Okay.  Thank you.
 2                    MR. SHULTZ:  We got our wires crossed.
 3                         Miles Shultz for the EEOC.
 4     Elizabeth Banaszak also appearing for the EEOC, and
 5     the EEOC stipulates to the remote swearing in.
 6                    MR. PHILLIPS:  Doug Phillips for the
 7     defendant Schuster Company.  We so stipulate.
 8                    THE STENOGRAPHER:  Would you raise
 9     your right hand?
10                         (Whereupon, witness sworn.)
11                    THE STENOGRAPHER:  The witness has
12     declared their testimony during this proceeding is
13     under penalty of perjury.  The parties have stated
14     their agreement on the record.
15                         You may proceed.
16                    MR. FISHMAN:  Ms. Potts, I think -- I
17     didn't have a chance to state on behalf of -- Burt
18     Fishman and John Clifford for CRT, and we so
19     stipulate.
20                         Before the proceedings begin, can
21     I alert you that CRT and Mr. Crosby want to review
22     and sign the deposition before it becomes final?
23                    THE STENOGRAPHER:  Okay.
24                    MR. FISHMAN:  Thank you.
```

1  Classification are optional, so not always does the
2  test administrator include that information.
3       Q    Okay.
4       A    But yes, this is the information that
5  would be sent.
6       Q    From that list of stuff -- the name,
7  age, gender, body weight -- that you gave when
8  the -- that the administrator types in prior to
9  starting the CRT test, what of those variables or
10 fields are required to be entered?
11      A    This is the last four digits of the
12 Social Security number, age, gender, body weight,
13 height, right or left handed is optional.
14      Q    And then back to the new functional --
15 New Hire Functional Testing Form, we have the
16 client's Body Index Score, BIS, is 175.
17           Do you see that?
18      A    I do.
19      Q    Can you explain what the Body Index
20 Score is for me?
21      A    That's the total score after the
22 person completes the test, the Body Index Score.
23 There's different ranges that correlate to the
24 Department of Labor strength levels.

1  Q    So from the extension and flexion
2  measurements for the five different tests, the five
3  different areas of the body, that gets condensed
4  down to this one final BIS score?
5  A    Yes.
6  Q    And we had talked about this before.
7  This algorithm is contained within the SQL server
8  at CRT headquarters.  Is that right?
9  A    That's correct.
10 Q    And Mr. Arp had developed the BIS
11 formula back, you know, 2001 or earlier, I take it.
12 Is that right?
13 A    I believe he started in 1999.
14 Q    Okay.  And the formula hasn't changed
15 since Mr. Arp first developed it.  Is that right?
16 A    It has not, no.
17 Q    And previous testimony is that CRT is
18 not aware of what the formula actually is.
19      Is that still the case?
20 A    That's correct.
21 Q    And whatever records -- My
22 recollection is whatever records you have were
23 destroyed in some sort of flood in the records
24 room?

1  wrist, you know, identify the wrist in the actual
2  test itself, but shoulder strength is derived by
3  that wrist having strength to move the, you know,
4  arm stable.
5              But we have seen that non-tested
6  joints have lowered injuries as well with companies
7  that -- if a person's physically able to do the
8  job, they're not compensating other joints to pick
9  up for the loss of another joint.
10     Q    So are there MSD injuries that you
11 would -- that CRT would consider to be outside of
12 the CRT test's capability to prevent and predict or
13 not?
14     A    Those would be considered accidents,
15 like slip and falls, fall -- kick an object,
16 something that's unpredictable and it wasn't
17 work-re- -- it happened at work, but it wasn't
18 work-related or job specific-related.
19              MR. SHULTZ:  Okay.  Now is a good
20 chance to take a quick -- How long do you think you
21 need to help . . .
22              THE WITNESS:  No more than ten
23 minutes.
24              MR. SHULTZ:  Okay.  Let's take a break

Thompson Court Reporters, Inc
thompsonreporters.com
Case 5:19-cv-04063-LRR-MAR   Document 56-5   Filed 01/26/21   Page 9 of 13
EEOC APP 71

1  A    Yes.
2       MR. SHULTZ:  So for the record,
3  Exhibit 9 is a 14-page document, Bates stamped
4  CRT 143 to CRT 156.
5  BY MR. SHULTZ:
6  Q    Do you recognize this document,
7  Mr. Crosby?
8  A    I do.
9  Q    Great.  And what is it?
10 A    It's the validation study we had
11 contracted DCI to complete.
12 Q    So this is the DCI study?
13 A    Yes.
14 Q    Let's talk a little bit -- Why did CRT
15 engage DCI to conduct this study?
16 A    For marketing tool purposes.  There's
17 value in that.
18 Q    And what was the process for finding
19 DCI?  Did you consider other consulting groups at
20 all?
21 A    We did.  That was mainly --
22 Jim Wildman took charge of that.  I'd want him in
23 charge of that, and so he looked at a few different
24 types of companies and ended up with DCI, and they

1  A    That would have been the job task
2  analysis that were completed for both companies.
3  Q    Okay. But in doing the study, did you
4  look at that to see whether it was appropriate to
5  include them all together or not?
6  A    I don't -- I guess I don't understand
7  your question.
8  Q    Let me get at it in a different way:
9  Do you know what the cut scores for the three
10 different positions at Company A are?
11 A    Not off the top of my head, but I'll
12 have a summary of it.
13 Q    Yeah. Can you look at your summary
14 and tell me?
15 A    Bear with me here.
16 Q    No problem.
17              (Brief pause.)
18 BY THE WITNESS:
19 A    Okay.
20 BY MR. SHULTZ:
21 Q    So what's the driver position at
22 Company A? What was the -- What's the cut score?
23 A    Light.
24 Q    And that would correspond to a BIS of

1  127?
2      A     That's correct.
3      Q     And how about the local driver
4  position at Company A?
5      A     I believe that's included on the
6  driver position. I don't have all the paperwork on
7  that.
8      Q     Okay.
9      A     I just have the summary.
10     Q     So that's probably a 127 too from what
11 you're looking at?
12     A     I would assume.
13     Q     And for the NBB local driver?
14     A     I believe that's also light under the
15 driver position.
16     Q     And so you're looking at -- We'll mark
17 this as Exhibit 10.
18                    (Brief pause.)
19            MR. SHULTZ:  I've put it in the "Chat"
20 for counsel.  It's CRT 36, I believe.  Let me see
21 if I guessed right.
22                    (Brief pause.)
23 BY MR. SHULTZ:
24     Q     I'll share my screen here.  So marking

1  their job requirement.  Being hurt doing their
2  actual job requirement is what we're trying to
3  prevent.
4       Q    Okay.
5       A    Accidents are, you know, the top one,
6  walking across the parking lot, slipped on ice, leg
7  fracture, that's not something that happened during
8  their normal job duties.
9       Q    Or jumping out of a truck that was on
10 fire?
11      A    Yeah.
12      Q    And there's some environmental things
13 like, looking at the first one, ice, if there's an
14 environmental cause that's not job-related, you
15 wouldn't -- the CRT test wouldn't prevent that?
16      A    Right.
17      Q    And then it looks like this person had
18 a very extensive injury, unfortunately.  Showering
19 and knee gave out/left knee dislocation.  It looks
20 like Rob didn't code that as relevant?
21      A    That's not part of their job duties.
22 He could have slipped in the shower.  We don't know
23 what caused that, you know.
24      Q    So let's look at -- What I'll