# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) No. |
| vs. | ) 5:19-CV-4063 ) |
| SCHUSTER CO, | ) ) |
| Defendant. | ) |

The remote videoconference and teleconference Rule 30(b)(6) deposition of CLIFFORD R. HAYMAN, Ph.D., for DCI Consulting, called for examination pursuant to the Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Layli Phillips, Certified Shorthand Reporter of the State of Illinois, all participants from their individual locations, on October 6, 2020, at 9:03 a.m.

Reported by: Layli Phillips, CSR, RPR, CRR
License No.: 084.003900

```
 1  APPEARANCES (via videoconference):
 2  For the Plaintiff:
         EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
 3       MR. MILES SHULTZ
         MS. ELIZABETH BANASZAK
 4       (Via videoconference)
         230 South Dearborn Street
 5       Suite 2920
         Chicago, Illinois 60604
 6       312.872.9718
         Miles.shultz@eeoc.gov
 7       Elizabeth.banaszak@eeoc.gov
 8
    For the Defendant:
 9       KLASS LAW FIRM, LLP.
         MR. DOUGLAS PHILLIPS
10       (Via videoconference)
         4280 Sergeant Road
11       Suite 290
         Sioux City, Iowa 51106
12       712.252.1866
         Phillips@klasslaw.com
13
14  For the Deponent and DCI Consulting:
         FORTNEY & SCOTT, LLC.
15       MR. BURTON J. FISHMAN
         (Via videoconference)
16       1750 K Street NW
         Suite 325
17       Washington, DC 20006
         202-887-0855
18       Bfishman@fortneyscott.com
19
    ALSO PRESENT:
20       Mr. Jeff Arens, Schuster
         (Via audio conference);
21
         Mr. John Clifford, CRT
22       (Via audio conference.)
23
24
```

```
 1                        I N D E X
 2
 3    Examinations                                    Page
 4
 5    By Mr. Shultz                                     6
 6
 7                      E X H I B I T S
 8
 9    Number           Description                    Page
10
11    Exhibit 1    Subpoena With the Notice            11
12                 Topics
13    Exhibit 2    Validation Study That DCI           16
14                 Conducted For CRT
15    Exhibit 3    DCI391 and 392                      23
16    Exhibit 4    CRT Schuster Validation Loss        25
17                 Data March 2010_February 2017
18                 020817
19    Exhibit 5    DCI86                               27
20    Exhibit 6    Coding For CRT to Review            28
21    Exhibit 7    DCI471 to 472                       36
22    Exhibit 8    DCI243 to 244                       49
23    Exhibit 9    CRT426 to 427                       54
24    Exhibit 10   CRT143 to 156                       62
```

```
1    Exhibit 11    CRT406 to 410                    65
2    Exhibit 12    DCI649 to 650                    67
3    Exhibit 13    KAST1718                         70
4    Exhibit 14    DCI200 to 213                    71
5    Exhibit 15    DCI302                           73
```

1  THE REPORTER: All parties are aware
2  that the witness will be sworn in remotely. The
3  parties agree not to challenge the validity of any
4  oath administered by the court reporter, even if
5  the court reporter is not physically present with
6  the witness and not a notary public in the state
7  where the witness resides.
8  Here begins the webconference deposition
9  of Dr. Clifford Haimann in the matter of EEOC vs.
10 Schuster Company.
11 Today's date is October 6, 2020, and the
12 time is 9:03 a.m. My name is Layli Phillips of
13 Thompson Court Reporters.
14 Beginning with the noticing party, will
15 counsel please introduce themselves, state whom
16 they represent, and stipulate to the swearing in
17 of the witness remotely.
18 MR. SHULTZ: Miles Shultz for the EEOC.
19 Also Elizabeth Banaszak appearing for the EEOC,
20 and the EEOC stipulates to the remote swearing in.
21 MR. PHILLIPS: Doug Phillips for
22 defendant. Defendant stipulates.
23 MR. FISHMAN: Burton Fishman for
24 deponent DCI. Defendant stipulates or third-party

```
 1  stipulates.
 2                    (Witness sworn.)
 3           THE REPORTER:  The witness has declared
 4  their testimony during this proceeding is under
 5  penalty of perjury.  The parties have stated their
 6  agreement on the record.
 7           You may proceed.
 8            CLIFFORD R. HAIMANN, Ph.D.,
 9           the deponent herein, called as a
10  witness, after having been first remotely duly
11  sworn, was examined and testified as follows:
12                      EXAMINATION
13  BY MR. SHULTZ:
14      Q.   Good morning, Dr. Haimann, Haimann.
15      A.   Haimann.
16      Q.   Haimann.  I said it right -- wrong the
17  first time but right now.
18           We met briefly off the record a moment
19  ago; but for the record, I'm Miles Shultz, and I
20  represent the EEOC in a lawsuit that the EEOC has
21  filed against Schuster Company that's pending in
22  the Northern District of Iowa.
23           The testimony you're about to give today
24  will be in that case; do you understand that?
```

1   what -- what happened is there were -- we made
2   a -- one report, and then we may have -- but then
3   we created a second kind of shortened, concise
4   report for them.  It's essentially the same
5   content, but I think you must have the longer one.
6       Q.   Oh, okay.  So Exhibit 2 for Company B,
7   which you're aware that company B is Schuster, I
8   take it?
9       A.   Correct, yes.
10      Q.   It it's a little hard to read because it
11  bleeds onto Page 5 as well.
12      A.   Right, yeah.
13      Q.   So it's going to be tricky.  Let's see
14  if I can do that.
15           There we go.
16      A.   Yeah.  Thanks.
17      Q.   So it looks like, the way I'm reading
18  this, this is a graph depicting or a table,
19  two-by-two table, depicting DCI and CRT coding
20  decisions for relevant and irrelevant injuries; is
21  that right?
22      A.   Correct.
23      Q.   And if I am tallying this up right, it
24  looks like DCI has coded 7 relevant injuries and

1  Do you know what I'm referring to when I
2  say the "CRT cut score"?
3  A.  The cut score to -- are you -- no.  Can
4  you clarify what you're referring to?
5  Q.  So the -- the CRT test gives this body
6  index score, are you aware of that, BIS?
7  A.  Yes.
8  Q.  And the BIS is that number that's
9  correlated to the Department of Labor exertional
10  classifications; do you remember that?
11  A.  Yes.
12  Q.  Okay.  So there is a minimum passing
13  score, minimum BIS passing score, for these
14  positions; do you remember that?
15  A.  Yes.
16  Q.  Okay.  So that's -- when I say the "CRT
17  cut score," I'm referring to that minimum passing
18  score, minimum body index passing score.  Okay?
19  A.  Yes.
20  Q.  All right.  So do you know if all these
21  different positions for Company A and Company B
22  that were included in the study, whether or not
23  they had the same "CRT cut scores"?
24  A.  I do not know if they used the same "CRT

```
 1  cut scores."
 2      Q.   Do you remember if that's something that
 3  DCI inquired about?
 4      A.   I don't remember.
 5      Q.   In looking at the study -- let me
 6  actually find the section.  That will be easier.
 7           Actually, I think it's another email.
 8  Hold on a second.
 9           All right.  I'm going to put an exhibit
10  in the chat.  Burt and Doug, this is DCI471 to
11  472.  I'll share it in a second.
12                    (Whereupon Deposition Exhibit
13                     No. 7 was marked for
14                     identification by the court
15                     reporter.)
16  BY MR. SHULTZ:
17      Q.   All right.  Cliff, are you able to see
18  my screen?
19      A.   Yes.
20           MR. SHULTZ:  This is Exhibit --
21           THE REPORTER:  7.
22           MR. SHULTZ:  -- 6, is that right, Doug
23  or Burt?  7.
24           MR. FISHMAN:  7, I think.
```

Page 41

1  Q.  Let me find another email here.
2  Actually, it's DCI391, which is Exhibit 2.  Let me
3  put that back on my screen.
4      Can you see my screen, Cliff?
5  A.  Yes.
6  Q.  So this paragraph here above what I have
7  in a red box says, "Schuster's data isn't
8  significant in terms of... losses"; do you see
9  that?
10 A.  Yes.
11 Q.  So the report, when you're analyzing
12 Company A and Schuster's data, the only -- so you
13 have, you know, logistic regressions for Company
14 A, a bunch of different statistical analyses, and
15 due to the low sample size of the Schuster data,
16 you're only able to do those Fisher exacts; is
17 that right?
18 A.  Correct.
19 Q.  Is there any concern with including --
20 you know, putting together Schuster's data, which
21 is pretty minimal, with Company A's data?
22 A.  Can you clarify?
23 Q.  Is it appropriate to include Schuster's
24 data with Company A's data since Schuster's data

1 is as -- is so minimal?
2   A.  So the -- I apologize.  The word
3 "appropriate" is a -- it's a broad and loaded
4 word.
5   Q.  How so?
6   A.  "Appropriate" statistically versus
7 "appropriate" from a job analysis standpoint.
8   Q.  Yeah.  Let's go with both.  So, first,
9 is it "appropriate" statistically?
10  A.  So we felt it was, and that's why we
11 included a control variable, a company control
12 variable, in the regressions.  That was the
13 methodological factor we used to account for the
14 fact that the data had been connected.
15  Q.  And how about as a -- from the job
16 analysis perspective?
17  A.  What I can say to that is as external
18 consultants, we -- we do what all external
19 consultants do, which is we take the data
20 information that's provided to us and analyze it
21 to the best of our ability.  So we were told that
22 these are highly similar positions and that we
23 could look at them together.
24  Q.  Okay.

1  A. That is the nature of being an external
2  consultant.
3  Q. Okay. Yeah. And I think that's
4  consistent with -- I'm not sure if it's in the
5  report or maybe in that cover letter where it
6  talks about, you know, this validity study isn't a
7  transport validity study? Am I using that
8  terminology correctly? Is it transport,
9  transportability?
10 A. So "transportability" would be the word,
11 yes.
12 Q. And that has to do with job analysis.
13 MR. FISHMAN: No.
14 BY MR. SHULTZ:
15 Q. Is that correct?
16 A. Sorry. There's a lot of questions here
17 or there's -- can you be -- can you be more
18 specific of your --
19 MR. FISHMAN: Miles, can I also object
20 to this line of questioning. This is not -- this
21 is drawing on specialized technical and scientific
22 expertise regarding specialized language, and it's
23 beyond the scope of the fact witness 30(b)(6) we
24 agreed to.