# EXHIBIT 15

**Declaration of Ronald S. Landis, Ph.D.**

*SUPPLEMENTAL ANALYSES*

IN THE MATTER:

EEOC v. SCHUSTER CO.

Civil Action No: 5:19-CV-4063 (N.D. Iowa)

DECEMBER 9, 2020

1. I, Dr. Ronald Landis, supplement my previous report with several additional analyses made possible after receiving additional employment data from the Defendant.

2. In order to evaluate whether the frequency of injuries was reduced following the introduction of the CRT test, I conducted several additional chi-square analyses. The chi-square test indicates whether the frequency of injuries is different than one would expect by chance alone. Having been provided a dataset that contains a roster of Schuster drivers from 2014-2020 (Driver List 2014 to Current.xlsx) and using driver numbers included in an Excel file provided by Dr. Hanvey, I performed alternative chi-square analyses that define chance in terms of the total driver population.

3. First, in a supplemental Excel file[1] associated with Dr. Hanvey's report, he includes the total number of drivers each year from 2011-2019. Of all drivers across all years, 26.99% of the total occur in the years preceding the use of the CRT test (2011-2013) and 73.01% of the total population of drivers are associated with the years 2014-2019.[2]

4. Table 1 includes Dr. Hanvey's total number of drivers for each of the included years (2011-2019) as well as the relative proportion of drivers. These numbers do not appear to be computed from any specific fields in the Excel file, but pulled from another source. I use these percentages as expected values in updated chi-square analyses for each of the three coding strategies.

5. Second, I computed the number of drivers employed by Schuster on December 31 of every calendar year from 2014-2019 using the data supplied in the file "Driver List 2014 to Current.xlsx."[3]

---

[1] Schuster WorkComp Injuries_withGraphs_07-06-20
[2] The CRT test was initiated partway into 2014, but given Dr. Hanvey's file included only year-end employee totals, years cannot be split.
[3] Defining driver populations using the December 31 approach was chosen to be consistent with numbers reported in Dr. Hanvey's Excel file (Schuster WorkComp Injuries_withGraphs_07-06-20)

2

6. Table 2 includes the total number of drivers for each of the included years (2011-2019) as well as the relative proportion of drivers.[4] Of all drivers across all years, 29.49% of the total occur in the years preceding the use of the CRT test (2011-2013) and 70.51% of the total population of drivers are associated with the years 2014-2019. I use these percentages as expected values in updated chi-square analyses for each of the three coding strategies.

| Year | Number of Drivers | Relative Proportion of Drivers |
|---|---|---|
| 2011 | 219 | 8.34% |
| 2012 | 226 | 8.60% |
| 2013 | 264 | 10.05% |
| 2014 | 269 | 10.24% |
| 2015 | 294 | 11.19% |
| 2016 | 320 | 12.18% |
| 2017 | 334 | 12.71% |
| 2018 | 340 | 12.94% |
| 2019 | 361 | 13.74% |
| Total | 2627 | |

**Table 1.** Total Driver Population by Year (2011-2019) – Hanvey

7. The number of drivers from 2014-2019 differ between Dr. Hanvey and me as mine were calculated from the file "Driver List 2014 to Current.xlsx." It is unclear to me how Dr. Hanvey computed the numbers he reported.

---

[4] Full driver rosters were not provided prior to 2014. For 2011-2013, I rely on the numbers supplied in an Excel file (Schuster WorkComp Injuries_withGraphs_07-06-20) provided in support of Dr. Hanvey's report.

3

EEOC APP 369

8. The chi-square test indicates whether the frequency of injuries is different than one would expect by chance alone. If there are statistically significantly more injuries prior to the introduction of the CRT test than after the test was implemented, then the chi-square test would have a probability of $p < .05$.[5]

| Year | Number of Drivers | Relative Proportion of Drivers |
|---|---|---|
| 2011 | 219 | 9.11% |
| 2012 | 226 | 9.40% |
| 2013 | 264 | 10.98% |
| 2014 | 221 | 9.19% |
| 2015 | 252 | 10.48% |
| 2016 | 257 | 10.69% |
| 2017 | 277 | 11.52% |
| 2018 | 314 | 13.06% |
| 2019 | 374 | 15.57% |
| Total | 2404 | |

**Table 2.** Total Driver Population by Year (2011-2019) – Landis

---

[5] A significant chi-square could also be observed if there were a statistically greater number of injuries following implementation of the CRT test.

**DR HANVEY TOTAL DRIVER NUMBERS**

9. Following the DCI coding system, I observe a non-significant chi-square test for the number of injuries (chi-square = 0.00, p = 1.00, see Table 3).

|  | Injury Count | Expected Proportion | Observed Proportion |
|---|---|---|---|
| **2011-2013** | 3 | .2699 | .2727 |
| **2014-2019** | 8 | .7301 | .7273 |
| **Total** | 11 | 1.00 | 1.00 |

**Table 3.** Observed and Expected Proportion of Injuries – DCI Coding/Hanvey Total Drivers

10. Following Dr. Hanvey's coding protocol, I observe a non-significant chi-square test for the number of injuries (chi-square = 2.68, p = .14, see Table 4).

|  | Injury Count | Expected Proportion | Observed Proportion |
|---|---|---|---|
| **2011-2013** | 9 | .2699 | .4286 |
| **2014-2019** | 12 | .7301 | .5714 |
| **Total** | 21 | 1.00 | 1.00 |

**Table 4.** Observed and Expected Proportion of Injuries – Dr. Hanvey Coding/Hanvey Total Drivers

5

EEOC APP 371

11. Following the Millan coding, I observe a non-significant chi-square test for the number of injuries (chi-square = 1.29, p = .39, see Table 5).

|  | Injury Count | Expected Proportion | Observed Proportion |
|---|---|---|---|
| **2011-2013** | 6 | .2699 | .4000 |
| **2014-2019** | 9 | .7301 | .6000 |
| **Total** | 15 | 1.00 | 1.00 |

**Table 5.** Observed and Expected Proportion of Injuries – Millan Coding/Hanvey Total Drivers

**DR LANDIS TOTAL DRIVER NUMBERS**

12. Following the DCI coding system, I observe a non-significant chi-square test for the number of injuries (chi-square = 0.03, p = 1.00, see Table 6).

|  | Injury Count | Expected Proportion | Observed Proportion |
|---|---|---|---|
| **2011-2013** | 3 | .2949 | .2727 |
| **2014-2019** | 8 | .7051 | .7273 |
| **Total** | 11 | 1.00 | 1.00 |

**Table 6.** Observed and Expected Proportion of Injuries – DCI Coding/Landis Total Drivers

13. Following Dr. Hanvey's coding protocol, I observe a non-significant chi-square test for the number of injuries (chi-square = 1.80, p = .23, see Table 7).

|  | **Injury Count** | **Expected Proportion** | **Observed Proportion** |
|---|---|---|---|
| **2011-2013** | 9 | .2949 | .4286 |
| **2014-2019** | 12 | .7051 | .5714 |
| **Total** | 21 | 1.00 | 1.00 |

**Table 7.** Observed and Expected Proportion of Injuries – Dr. Hanvey Coding/Landis Total Drivers

14. Following the Millan coding, I observe a non-significant chi-square test for the number of injuries (chi-square = 0.80, p = .38, see Table 8).

| 15. | **Injury Count** | **Expected Proportion** | **Observed Proportion** |
|---|---|---|---|
| **2011-2013** | 6 | .2949 | .4000 |
| **2014-2019** | 9 | .7051 | .6000 |
| **Total** | 15 | 1.00 | 1.00 |

**Table 8.** Observed and Expected Proportion of Injuries – Millan Coding/Landis Total Drivers

16. These results from the six different analyses are consistent with the analyses included in my previous report. Specifically, there is no evidence for a statistically significant reduction in relevant injuries following the introduction of the CRT test based on the chi-square tests.

**CRT TESTING ACROSS YEARS**

17. Table 9, Figure 1, and Figure 2 depict the number and percentage of individuals who took the CRT test pre-hire and passed, incumbents who received passing scores, incumbents who received failing scores, and those who took the test pre-hire, received a failing score, but were hired.

|      | Hire Pass | Incumbent Pass | Incumbent Fail | Hire Fail | Total Employees |
|------|-----------|----------------|----------------|-----------|-----------------|
| **2014** | 32  | 77 | 15 | 0 | 220 |
| **2015** | 93  | 94 | 17 | 1 | 252 |
| **2016** | 118 | 86 | 18 | 2 | 257 |
| **2017** | 158 | 75 | 12 | 1 | 277 |
| **2018** | 202 | 70 | 9  | 4 | 314 |
| **2019** | 282 | 60 | 8  | 2 | 374 |

**Table 9.** Number of CRT Test Takers per Year by CRT Testing Status



**Figure 1.** Percentage of Employees by CRT Testing Status



**Figure 2.** Percentage of Employees by CRT Testing Status (Pre-Hire v. All Others)

**FISHER'S EXACT TEST**

18. Data were also analyzed using a Fisher's Exact Test which evaluated the relation between whether an individual took the CRT test pre-hire or not and whether they subsequently incurred a relevant injury.[6] These analyses are similar to those included in the DCI report (pp. 12 & 29).

19. Current analyses explicitly consider whether an individual took the CRT test pre-hire and whether she or he incurred a subsequent relevant injury. Analyses were again performed using the three different coding approaches.

20. Of note, the numbers of individuals included in these analyses are different than those reported in the prior chi-square tests as the Fisher's Exact Test also includes individuals who were employed for only part of a given year (i.e., hired in a given year, but no longer employed on December 31 of that year). In short, any driver who appeared in the provided file (Driver List 2014 to Current.xlsx) was included in the following reported analyses.

---

[6] One individual had two injuries recorded. Results here are presented treating each injury as a separate instance.

21. Following the DCI coding system, I observe a non-significant Fisher's Exact Test for the number of injuries (Odds Ratio = 3.02, p = 0.45, see Table 10)[7].

|  | **No Injury** | **Injury** | **Total** |
|---|---|---|---|
| **No Pre-Hire Test** | 441 | 1 | 442 |
| **Pre-Hire Test** | 1020 | 7 | 1027 |
| **Total** | 1461 | 8 | 1469 |

**Table 10.** Relation between Tested Status and Injury (2014-2019) – DCI Coding

22. Following Dr. Hanvey's coding protocol, I observe a non-significant Fisher's Exact Test for the number of injuries (Odds Ratio = 4.77, p = .12, see Table 11).

|  | **No Injury** | **Injury** | **Total** |
|---|---|---|---|
| **No Pre-Hire Test** | 441 | 1 | 442 |
| **Pre-Hire Test** | 1016 | 11 | 1027 |
| **Total** | 1457 | 12 | 1469 |

**Table 11.** Relation between Tested Status and Injury (2014-2019) – Dr. Hanvey Coding

---

[7] The Odds Ratio is a measure of how far the contingency table is from the null condition (i.e., an Odds Ratio of 1.00).

23. Following the Millan coding, I observe a non-significant Fisher's Exact Test for the number of injuries (Odds Ratio = 3.46, p = .29, see Table 12).

|  | No Injury | Injury | Total |
|---|---|---|---|
| **No Pre-Hire Test** | 441 | 1 | 442 |
| **Pre-Hire Test** | 1019 | 8 | 1027 |
| **Total** | 1460 | 9 | 1469 |

**Table 12.** Relation between Tested Status and Injury (2014-2019) – Millan Coding

24. As a summary, Table 13 presents the number injuries for each coding approach in relation to whether an individual took the CRT test pre-hire. Only a single injury in each coding approach was associated with a driver who did not take the CRT test pre-hire. All other injuries were associated with drivers who were hired after taking the CRT test.

| Year | CRT Test for Hire Percentage | No CRT Test for Hire Percentage | DCI Coding | | Hanvey Coding | | Landis Coding | |
|---|---|---|---|---|---|---|---|---|
| | | | Hired with CRT + Injured | Hired w/o CRT + Injured | Hired with CRT + Injured | Hired w/o CRT + Injured | Hired with CRT + Injured | Hired w/o CRT + Injured |
| **2014** | 15% | 85% | 0 | 1 | 0 | 1 | 0 | 1 |
| **2015** | 37% | 63% | 0 | 0 | 0 | 0 | 0 | 0 |
| **2016** | 46% | 54% | 0 | 0 | 0 | 0 | 0 | 0 |
| **2017** | 57% | 43% | 1 | 0 | 2 | 0 | 2 | 0 |
| **2018** | 64% | 36% | 2 | 0 | 3 | 0 | 2 | 0 |
| **2019** | 75% | 25% | 4[8] | 0 | 6 | 0 | 4 | 0 |

**Table 13.** Percentage of Drivers Hired with CRT Test and Number of Injuries by Testing Status

---

[8] In Dr. Hanvey's report, one individual (Van Beek) injured in 2019 is identified as having not passed the CRT test. A pre-hire test score was provided for this individual in the file "CRT Component Data Schuster.xls." This individual took and passed the pre-hire CRT test on 3/27/19 (BIS = 225).

25. Results from these analyses are consistent with those included in my previous report and those reported earlier herein. Specifically, there is no evidence for a statistically significant reduction in relevant injuries following the introduction of the CRT test based on the Fisher's Exact Test across all coding schemes. In fact, the tables reveal that more injuries occurred for individuals who took the CRT test pre-hire than those who did not. That is, the observed number of injuries for those who took the CRT test pre-hire is higher than what would be expected based on chance.

APPENDIX

FILES USED IN PREPARATION OF THIS SUPPLEMENTAL REPORT

1. Schuster WorkComp Injuries_withGraphs_07-06-20 – Provided in support of Dr. Hanvey's Report
2. Driver List 2014 to Current.xlsx
3. CRT Component Data Schuster.xls

EEOC APP 381